UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA M.,[1] <br> Plaintiff, <br> v. <br> KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, <br> Defendant. | Case No. 5:21-cv-01554-JC <br><br> MEMORANDUM OPINION <br><br> [DOCKET NOS. 16, 19] |

## I. SUMMARY

On September 14, 2021, plaintiff filed a Complaint seeking review of the Commissioner of Social Security's denial of her application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross-motions for summary judgment (respectively, "Plaintiff's Motion" and "Defendant's Motion"). The Court has taken the parties' arguments under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; Case Management Order ¶ 5.

---

[1]Plaintiff's name is partially redacted to protect plaintiff's privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On September 16, 2019, plaintiff protectively filed an application for Disability Insurance Benefits, alleging disability beginning December 21, 2016, due to major depression disorder, bipolar disorder, general anxiety/stress disorder, panic attacks, paranoid personality disorder, and borderline personality disorder. (See Administrative Record ("AR") 167-68, 200).

An ALJ subsequently examined the medical record and, on March 12, 2021, heard testimony from a vocational expert and plaintiff (who was represented by counsel). (AR 31-64). On March 31, 2021, the ALJ determined that plaintiff was not disabled from December 21, 2016 to the date of the decision. (AR 15-25). Specifically, the ALJ found: (1) plaintiff has the following severe impairments: bipolar disorder and general anxiety disorder (AR 17); (2) plaintiff's impairments, considered individually or in combination, do not meet or medically equal a listed impairment (AR 18); (3) plaintiff retains the residual functional capacity (or "RFC")[2] to perform a full range of work at all exertional levels with the following non-exertional limitations: receiving, comprehending and executing only simple, routine tasks; having only occasional contact with the public; and dealing with only occasional changes in the work setting (AR 20); (4) plaintiff is unable to perform any past relevant work (AR 24); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically sweeper/cleaner, linen room attendant, and checker I (AR 24-25); and

---

[2]Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

(6) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were inconsistent with the medical evidence and other evidence in the record (AR 20).

On August 23, 2021, the Appeals Council denied plaintiff's application for review of the ALJ's decision. (AR 1-3).

## III. APPLICABLE LEGAL STANDARDS

### A. Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded by regulation on other grounds; 20 C.F.R. §§ 404.1505(a), 416.905(a). To be considered disabled, a claimant must have an impairment of such severity that she is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four – *i.e.*, determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual functional capacity to perform past relevant work (step 4).

Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  The Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy.  Id.

    **B.**  **Federal Court Review of Social Security Disability Decisions**

    A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record."  42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  The standard of review in disability cases is "highly deferential."  Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted).  Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision.  Trevizo, 871 F.3d at 674-75 (citations omitted).  Even when an ALJ's decision contains error, it must be affirmed if the error was harmless.  See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

    Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted).  When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]"  Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

    Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely."  Trevizo, 871 F.3d at 675 (citations omitted).  Hence, while an ALJ's decision need

not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV.   DISCUSSION

Plaintiff claims that the ALJ (1) failed to provide specific, clear and convincing reasons for discounting plaintiff's allegations of mental dysfunction; (2) failed to provide legally sufficient reasons for discounting the medical source opinions of plaintiff's treating therapist, Carl Wilson, D.B.H., and the consultative psychological examiner, Mehrnoosh Rezapour, Psy.D.;[3] and (3) failed to discuss or provide any rationale for discounting the third-party statements of plaintiff's partner, Anthony Hurtado. (See Plaintiff's Motion at 1-15). For the reasons stated below, the Court concludes that a reversal or remand is not warranted.

### A.   The ALJ Did Not Err in Assessing Plaintiff's Subjective Statements

#### 1.   Applicable Law

When determining disability, an ALJ is required to consider a claimant's impairment-related pain and other subjective symptoms at each step of the sequential evaluation process. 20 C.F.R. § 404.1529(a), (d). Accordingly, when a claimant presents "objective medical evidence of an underlying impairment which

---

[3]Plaintiff presents this as two separate issues, one for each of the two medical sources (Wilson and Rezapour), but they are organized here in one overall issue.

5

might reasonably produce the pain or other symptoms [the claimant] alleged," the ALJ is required to determine the extent to which the claimant's statements regarding the intensity, persistence, and limiting effects of his or her subjective symptoms ("subjective statements" or "subjective complaints") are consistent with the record evidence as a whole and, consequently, whether any of the individual's symptom-related functional limitations and restrictions are likely to reduce the claimant's capacity to perform work-related activities. 20 C.F.R. § 404.1529(a), (c)(4); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4-10.[4] When an individual's subjective statements are inconsistent with other evidence in the record, an ALJ may give less weight to such statements and, in turn, find that the individual's symptoms are less likely to reduce the claimant's capacity to perform work-related activities. See SSR 16-3p, 2017 WL 5180304, at *8. In such cases, when there is no affirmative finding of malingering, an ALJ may "reject" or give less weight to the individual's subjective statements "only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 488-89. This requirement is very difficult to satisfy. See Trevizo, 871 F.3d at 678 ("The clear and convincing standard is the most demanding required in Social Security cases.") (citation and quotation marks omitted).

An ALJ's decision "must contain specific reasons" supported by substantial evidence in the record for giving less weight to a claimant's statements. SSR 16-3p, 2017 WL 5180304, at *10. An ALJ must clearly identify each subjective statement being rejected and the particular evidence in the record which

---

[4] Social Security Rulings reflect the Social Security Administration's ("SSA") official interpretation of pertinent statutes, regulations, and policies. 20 C.F.R. § 402.35(b)(1). Although they "do not carry the 'force of law,'" Social Security Rulings "are binding on all components of the . . . Administration[,]" and are entitled to deference if they are "consistent with the Social Security Act and regulations." 20 C.F.R. § 402.35(b)(1); Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks omitted); see also Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984) (discussing weight and function of Social Security rulings).

purportedly undermines the statement. Treichler, 775 F.3d at 1103 (citation omitted). Unless there is affirmative evidence of malingering, the Commissioner's reasons for rejecting a claimant's testimony must be "clear and convincing." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (internal quotation marks omitted), as amended (Apr. 9, 1996). "General findings are insufficient[.]" Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted).

If an ALJ's evaluation of a claimant's statements is reasonable and is supported by substantial evidence, it is not the court's role to second-guess it. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted). When an ALJ fails properly to discuss a claimant's subjective complaints, however, the error may not be considered harmless "unless [the Court] can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056; see also Brown-Hunter, 806 F.3d at 492 (ALJ's erroneous failure to specify reasons for rejecting claimant testimony "will usually not be harmless").

### 2. Plaintiff's Statements

As noted above, plaintiff alleged that she was unable to work due to mental impairments, including major depressive disorder, bipolar disorder, generalized anxiety and stress disorder with panic attacks, and paranoid personality disorder (AR 200). Plaintiff provided statements about her impairments on a function report dated November 9, 2019 (AR 215-22), and at the hearing on March 12, 2021 (AR 40-54), alleging the following:

Plaintiff's mental health conditions make it very difficult to concentrate, focus, and feel calm. (AR 215). She becomes extremely anxious and is easily confused and distracted, with difficulty remembering basic thoughts and directions. (AR 220). She also has difficulty talking and getting along with others because she feels paranoid and judged most of the time. (AR 215, 220). Her stress is overwhelming and causes her to panic, and her anxiety makes her "shaky." (AR

215). On some days, she feels depressed, does not want to be around anyone, even family, and requires bed rest all day and meals prepared for her. (AR 45, 216). On other days, she feels great and can shower, groom, attend scheduled appointments, visit with family members, perform housework, and try to do yoga and meditate. (AR 45, 216). She also performs household cleaning, laundry, and occasional yard work. (AR 217). She goes out daily, but does not go out alone due to anxiety, paranoia, confusion, and panic attacks. (AR 218). She shops in stores a few times a month, but as quickly as possible because of her anxiety and paranoia. (AR 218). While shopping, she sometimes begins crying and hyperventilating from worry, and she "barely make[s] it out" of the store. (AR 49). At such times, her boyfriend needs to hold her hand and make sure she is okay. (AR 49). Plaintiff generally feels comfortable with family and talks to them almost daily, but she still feels that they are judging her. (AR 50, 219). She does not handle stress or changes in routine well. (AR 221). She can only pay attention for a very short amount of time, and has difficulty following spoken instructions, but gets along very well with authority figures. (AR 50, 220-21).

### 3. Analysis

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 20). The ALJ's stated reasons for discounting plaintiff's subjective complaints are specific, clear and convincing.

First, the ALJ found that plaintiff's allegations were inconsistent with the objective medical evidence. (AR 20-22). "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis original); see also Burch, 400 F.3d at 681

("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider . . . .");[5] Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); SSR 16-3p, 2016 WL 1119029, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"); 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence. . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.").

As support, the ALJ noted that while mental status examinations from plaintiff's therapist, Dr. Wilson, occasionally reflected poor eye contact with anxious mood, circumstantial speech, and self-deprecating thought content, Dr. Wilson's findings otherwise were "largely unremarkable" and consistently noted plaintiff to be oriented with appropriate affect, appropriate dress, appropriate speech, appropriate thought content and process, good insight, good judgment, normal psychomotor activity, good immediate/recent/past memory, and with no

---

[5]The Ninth Circuit recently clarified Burch as follows:

[W]hat Burch requires is that an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise. That is, an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence "fully corroborat[ing]" every allegation within the subjective testimony. That – and only that – is what Burch forbids.

Smartt, 53 F.4th at 498 (quoting Burch, 400 F.3d at 681) (other citation omitted).

evidence of cognitive deficits. (AR 21; see, e.g., AR 298, 411-12, 422, 425-26, 436, 439-440, 450, 462-63, 467-68, 474-75, 486-87, 493-94, 511-12, 541-42). The ALJ remarked that plaintiff's condition was noted to be generally improving, and plaintiff consistently denied experiencing suicidal ideations or hallucinations. (AR 21; see, e.g., AR 416-19, 422, 436, 450, 466, 471, 478, 490, 497, 552). The ALJ cited similar findings from other providers in the record. (AR 21; see AR 298, 329, 331, 333, 335, 337, 340-41, 343, 791-96). The ALJ also noted that the consultative psychologist, Dr. Rezapour, observed that plaintiff appeared distressed and described her mood as depressed, but that plaintiff was engaged and cooperative during the evaluation. (AR 21; see AR 394, 396). Dr. Rezapour also observed that plaintiff maintained good eye contact and was alert and oriented with normal speech, normal thought processes, normal thought content, normal insight and judgment, and normal abstract thinking skills. (AR 21; see AR 396).

Second, the ALJ found that plaintiff's symptoms improved with therapy and medication compliance. (AR 22). This is a clear and convincing reason for discounting the severity of plaintiff's alleged limitations. See Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017) ("Symptoms may wax and wane during the progression of a mental disorder. Those symptoms, however, may also subside during treatment. . . . Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability.") (citations omitted); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling . . . ."); Bailey v. Colvin, 659 F. App'x 413, 415 (9th Cir. 2016) (evidence that "impairments had been alleviated by effective medical treatment," to the extent inconsistent with "alleged total disability[,]" specific, clear, and convincing reason for discounting subjective complaints) (citing Warre, 439 F.3d at 1006). Here, as the ALJ noted, plaintiff had undergone no psychiatric hospitalizations or emergent care since 2016, during a period when she had

stopped taking her medication and was hospitalized for a suicide attempt and noted to be unable to care for herself. (AR 20-22; see AR 395, 410). After that, Dr. Wilson "promptly re-medicated her" and "noted [plaintiff's] self-care and coping strategies had significantly improved while she was under his care." (AR 21; see AR 410). The ALJ remarked that plaintiff also "reported utilizing coping strategies such as journaling, meditating, taking walks, engaging in self-care practices, and spending time with family." (AR 21; see AR 412, 468).

In addition, the ALJ found that plaintiff was able to engage in daily activities "that are not limited to the extent one would expect given her allegations of disabling symptoms." (AR 22). For example, in contrast to plaintiff's alleged difficulty focusing, plaintiff was able to paint, meditate, do yoga, and drive. (AR 22; see AR 40-41, 47, 396, 413). Despite alleging that she had difficulty being around crowds due to anxiousness and paranoia, plaintiff reported she got along well with authority figures, could shop in stores, attended weekly appointments, and spoke with her family on a daily basis. (AR 22; see AR 218-21). The ALJ acknowledged that "the scope and extent of these regular activities may change from day to day," but nonetheless found that plaintiff's "ability to participate in such activities tends to suggest she is far more capable than she alleges and undermines the reliability of her allegations of disabling functional limitations." (AR 22). This finding was reasonable. See Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014) (inconsistencies between alleged limitations and claimant's reported activities valid reason for giving less weight to claimant's subjective complaints) (citation omitted); Molina, 674 F.3d at 1113 ("Even where [a claimant's] activities suggest some difficulty functioning, they may be grounds for [giving less weight to] the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (citations omitted); Valentine v. Commissioner, 574 F.3d 685, 693 (9th Cir. 2009) (claimant's admitted activities did not suggest that claimant could work, but did suggest that claimant was

exaggerating the severity of claimant's limitations); see also SSR 16-3p, 2016 WL 1119029, at *7 (ALJ may determine that claimant's symptoms "are less likely to reduce his or her capacities to perform work-related activities" where claimant's subjective complaints are inconsistent with evidence of claimant's daily activities) (citing 20 C.F.R. § 404.1529(c)(3)).

Plaintiff fails to identify any significant error in the ALJ's consideration of the record on this issue. Instead, she contends that her activities and the normal findings in the record are consistent with the waxing-and-waning nature of her symptoms and do not reflect overall improvement or a functional ability consistent with full-time gainful activity. (Plaintiff's Motion at 5-7). However, the ALJ did not dispute that plaintiff's symptoms varied and some limitations persisted. Rather, the ALJ reasonably determined that plaintiff's examinations and other evidence were inconsistent with the extent of the limitations alleged. That finding is supported by substantial evidence in the record. Although the medical record undoubtedly contains some abnormal findings, the Court must defer to the ALJ's reasonable interpretation of the record. See Brown-Hunter, 806 F.3d at 492 ("[W]e leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.") (quoting Treichler, 775 F.3d at 1098); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) ("[I]f evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld").

Accordingly, the ALJ provided specific, clear, and convincing reasons to discount plaintiff's subjective statements. A remand or reversal on the basis of the ALJ's consideration of plaintiff's subjective statements and testimony is not warranted.

**B.    The ALJ Did Not Err in Assessing the Medical Opinions**

Plaintiff claims that the ALJ failed to provide legally sufficient reasons to discount the opinions of her treating therapist, Carl Wilson, D.B.H., and the consultative psychological examiner, Mehrnoosh Rezapour, Psy.D. (Plaintiff's

Motion at 1, 7-13).  As explained below, the ALJ's assessment of the medical opinions accords with applicable standards and is supported by substantial evidence in the record.

### 1. Applicable Law

For claims filed on or after March 27, 2017, such as plaintiff's claims here, new regulations govern the evaluation of medical opinion evidence.  Under these regulations, ALJs no longer "weigh" medical opinions; rather, ALJs determine which opinions are the most "persuasive" by focusing on several factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of treatment, frequency of examinations, purpose of treatment, extent of treatment, whether the medical source examined the claimant); (4) the medical source's specialty; and (5) "other" factors.  See 20 C.F.R. § 404.1520c(c)(1)-(5).

The two most important factors in determining the persuasiveness of medical opinions are supportability and consistency with the evidence.  See 20 C.F.R. § 404.1520c(a).  ALJs must explain how they considered the factors of supportability and consistency, but need not explain how they considered any other factor.  See 20 C.F.R. § 404.1520c(b).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  Woods v. Kijakazi, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)).  "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'"  Id. (quoting 20 C.F.R. § 404.1520c(c)(2)).

Under the new regulations, treating and examining sources no longer receive special deference, and the ALJ no longer needs to provide "specific and legitimate" reasons to reject opinions from such sources.  See 20 C.F.R. § 404.1520c; Woods, 32 F.4th at 792.  Even so, in evaluating medical opinion evidence "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as

unsupported or inconsistent without providing an explanation supported by substantial evidence." Woods, 32 F.4th at 792. Finally, the new regulations command that an opinion that a claimant is disabled or not able to work is "inherently neither valuable nor persuasive," and an ALJ need not provide any analysis about how such evidence is considered. See 20 C.F.R. § 404.1520b(c)(3).

### 2.     Carl Wilson, D.B.H.

Plaintiff began receiving therapy from Dr. Wilson in August 2016. (AR 410). In September 2020 and January 2021, Dr. Wilson opined that plaintiff's mental health issues rendered her permanently unable to return to normal functioning. (AR 410, 422, 540, 552). He noted that plaintiff's ability to interact with others was significantly diminished, and her dysregulation likely contributed to her inability to manage stress. (AR 422, 552). He further stated that plaintiff's frequent relapses would make it impossible for her to continue steady work. (AR 410, 552).

The ALJ found this opinion "less persuasive" on the grounds that it was "generally unsupported and inconsistent with the evidence as a whole." (AR 23-24). As support, the ALJ noted that the record "reflects many normal mental status examination findings, including those documented in Dr. Wilson's own treatment notes." (AR 23-24; see AR 298, 329, 331, 333, 335, 337, 340-42, 345, 354, 396-97, 412-16, 463, 467-68, 487, 493-94, 511-12, 521-22, 527-28, 791-96). The ALJ also noted that plaintiff had significantly improved under Dr. Wilson's care. (AR 23; see AR 410). These findings are supported by substantial evidence in the record.

As for Dr. Wilson's assertion that plaintiff was unable to work, the ALJ appropriately rejected this as an opinion on an issue reserved for the Commissioner. (AR 24); see 20 C.F.R. § 404.1520b(c)(3). Although the ALJ "agree[d]" with Dr. Wilson that plaintiff has some limitations in interacting with

///

14

others and managing stress, the ALJ accounted for such limitations in the RFC and determined that they did not preclude plaintiff from working. (AR 23-24).

Plaintiff contends that the ALJ should have given greater consideration to the abnormal mental status findings in the record and the fact that her symptoms wax and wane.[6] (Plaintiff's Motion at 10-11). However, plaintiff fails to identify any error in the ALJ's opinion, and the Court cannot second-guess the ALJ's reasonable consideration of the record evidence as a whole. Here, the ALJ's appropriately assessed Dr. Wilson's opinion by considering its "supportability" and "consistency." See 20 C.F.R. § 404.1520c. To the extent that the ALJ rejected the opinion, the ALJ adequately provided a reasonable explanation supported by substantial evidence in the record. See Woods, 32 F.4th at 792. Under the applicable regulations, the Court cannot require more.

### 3. Mehrnoosh Rezapour, Psy.D.

Dr. Rezapour provided a consultative psychological examination on March 16, 2020. (AR 394-98). Dr. Rezapour noted that plaintiff had no difficulty interacting with the clinic staff or himself but had moderate difficulty maintaining composure and even temperament. (AR 397). Dr. Rezapour also opined that plaintiff had moderate difficulties in maintaining social functioning, in focusing and maintaining attention, and in concentration, persistence and pace. (AR 397). According to Dr. Rezapour, the objective findings presented during the interview suggested that plaintiff had mild limitations in performing simple and repetitive tasks, and moderate limitations in performing detailed and complex tasks; performing work activities on a consistent basis without special or additional

---

[6]Plaintiff also contends that even under the new regulations, the ALJ still must provide specific and legitimate reasons to reject a treating medical source's opinion. (Plaintiff's Motion at 9-10). However, as noted above, the Ninth Circuit has since clarified that no such requirement applies under the new regulations. Woods, 32 F.4th at 792. Instead, when rejecting an opinion as unsupported or inconsistent, ALJs need only give an explanation supported by substantial evidence. Id.

15

supervision; completing a normal workday or workweek; accepting instructions from supervisors and interacting with coworkers and with the public; and handling the usual stresses, changes, and demands of gainful employment. (AR 397). Dr. Rezapour also noted that plaintiff had a good level of personal independence and was intellectually and psychologically capable of performing activities of daily living. (AR 397).

The ALJ agreed that plaintiff had moderate limitation in social interaction, concentration, and handling stresses, but the ALJ otherwise found Dr. Rezapour's opinion "less persuasive" essentially because it was not adequately supported with explanations of relevant, objective evidence and was not consistent with evidence from other sources in the record. (AR 23). In particular, the ALJ noted that because Dr. Rezapour had not reviewed plaintiff's medical records, he was unaware of plaintiff's "longitudinal treatment history, including the many normal mental status findings." (AR 23; see AR 298, 329, 331, 333, 335, 337, 340-42, 345, 354, 396-97, 412-16, 463, 467-68, 487, 493-94, 511-12, 521-22, 527-28, 791-96). Instead, Dr. Rezapour's opinion was based only on his examination and plaintiff's subjective reports. (AR 23; see AR 394-98). The ALJ also noted that plaintiff reportedly was close with her family and got along well with authority figures, and there was no indication that she had difficulty getting along with providers. (AR 23; see AR 219, 221). Moreover, the ALJ found no indication that plaintiff "would need special supervision when completing tasks or would have difficulty completing a normal work schedule with the limitations assessed in the [RFC]." (AR 23).

Plaintiff contends that the ALJ inappropriately rejected Dr. Rezapour's opinion on the ground that it was based on a "one-time examination." (Plaintiff's Motion at 12). To the contrary, the ALJ reasonably determined that Dr. Rezapour's opinion was not supported by Dr. Rezapour's own examination and was inconsistent with the record evidence as a whole – *i.e.*, it lacked

"supportability" and "consistency." See 20 C.F.R. § 404.1520c. The consultative examiner's opinion was instead based mainly on plaintiff's own subjective reports – which the ALJ also appropriately discounted, as explained above. Because the ALJ addressed the two essential criteria and provided reasonable explanations supported by substantial evidence in the record, remand or reversal on the basis of the ALJ's consideration of the medical opinions is not warranted. See Woods, 32 F.4th at 792.

### C. Any Error in the ALJ's Failure to Address the Third Party Statements of Mr. Hurtado Was Harmless

Plaintiff contends that the ALJ erred because he did not discuss the statements of plaintiff's partner, Mr. Hurtado, who provided a third-party function report in November 2019. (Plaintiff's Motion at 13-15; see AR 225-32).

As plaintiff points out, Mr. Hurtado alleged the following: Plaintiff suffers from serious mental illness that requires a lot of bed rest. (AR 225). She gets confused fairly easily, can pay attention for only a few minutes at a time, and is often forgetful and needs reminders. (AR 227, 230-31). She panics when receiving instructions, which need to be explained a few times before she understands them. (AR 230). She is often anxious and does not handle stresses or changes in routine well, and daily tasks and routines are difficult. (AR 230-32).

Although the ALJ did not specifically address Mr. Hurtado's statements, any failure to do so was harmless since his statements were largely duplicative of plaintiff's own statements in the record that the ALJ appropriately assessed, as noted above.[7] See Johnson v. Kijakazi, 2022 WL 3998572, at *2 (9th Cir. Sept. 1,

---

[7]Defendant contends that under the new regulations, ALJs are not required to articulate their consideration of evidence from nonmedical sources, including lay witnesses such as Mr. Hurtado. (Defendant's Motion at 22-25). The Ninth Circuit has not ruled on this issue, Johnson v. Kijakazi, 2022 WL 3998572, at *2 (9th Cir. Sept. 1, 2022) (unpublished) (expressly declining to rule on this unresolved issue because any error was harmless), but at least some district courts
(continued...)

2022) (unpublished) ("Because the lay witness statements were largely duplicative of [plaintiff's] own testimony, the ALJ's failure to address the statements was inconsequential and therefore harmless.") (citation omitted); Molina, 674 F.3d at 1115 (ALJ's error in failing to explain his reasons for disregarding lay testimony is harmless where the reasons for rejecting a claimant's symptom testimony apply equally to third-party lay witness testimony); Valentine, 574 F.3d at 694 (ALJ's valid reasons for rejecting claimant's testimony were equally germane to similar lay testimony).

## V.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: December 23, 2022

                                           /s/
                               Honorable Jacqueline Chooljian
                               UNITED STATES MAGISTRATE JUDGE

---

[7](...continued) in this Circuit have rejected the Commissioner's argument and concluded that ALJs still must consider lay witness statements, see, e.g., Gina S. K. v. Comm'r of Soc. Sec., 2022 WL 16947844, at *4 (W.D. Wash. Nov. 15, 2022) (concluding that the ALJ's failure to address lay witness statements was error, albeit harmless error); Neri v. Comm'r of Soc. Sec., 2022 WL 16856160, at *7 (E.D. Cal. Nov. 10, 2022) ("Based on a plain reading of the revised regulations, the Court concludes the new regulatory framework requires an ALJ to *consider* lay testimony, but does not necessarily require him to articulate *how* he considered it."). Regardless, this Court need not address this issue because any error was harmless, as noted above.